UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLEY OVERFIELD, et al., | No. 2:24-cv-00199-TLN-AC |
| Plaintiffs, | |
| v. | **ORDER** |
| WELLPATH COMMUNITY CARE, LLC, et al., | |
| Defendants. | |

This matter is before the Court on Defendant County of El Dorado's ("Defendant") Motion to Dismiss.[1] (ECF No. 41.) Plaintiffs Lesley Overfield ("Lesley") and minor children, A.O. and B.O., (collectively, "Plaintiffs") filed an opposition. (ECF No. 46.) Defendant filed a reply. (ECF No. 48.) For the reasons set forth below, the Court DENIES Defendant's Motion to Dismiss.

///

///

///

///

---

[1] Defendants California Forensic Medical Group, Inc., Wellpath, LLC, Ross Chapman, Emily Walker, Daryl Lauffer, Abdurrahman Bilal, Stephen Kowalczyk, and Matthew Foxworthy are still named defendants in the action but do not join in the instant motion.

1

1     **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2     On February 21, 2022, Nicholas Overfield ("Nick"), Lesley's son and A.O. and B.O.'s

3 father, was arrested and detained at the El Dorado County Jail for 63 days.  (ECF No. 38 ¶¶ 2–5.)

4 Plaintiffs allege Nick repeatedly requested his prescribed HIV medication during that time but

5 was continuously denied.  (*Id*. ¶ 3.)  Plaintiffs further allege, as a result of not receiving his

6 prescribed HIV medication, Nick's HIV developed into AIDS and on June 21, 2022, Nick died.

7 (*Id*. ¶¶ 6–7.)  Nick's death certificate identified encephalitis varicella zoster virus as the

8 immediate cause of death and indicated Nick had contracted the virus two months prior to his

9 death.  (*Id*.)  Thus, Plaintiffs allege Nick contracted the virus while he was a pre-trial detainee of

10 Defendant and under the care of Wellpath, LLC.  (*Id*.)

11     On August 21, 2024, Plaintiffs filed a Second Amended Complaint ("SAC") alleging the

12 following claims against Defendant: municipal liability for an unconstitutional custom or practice

13 under 42 U.S.C. § 1983 ("§ 1983") and failure to accommodate under Title II of the Americans

14 with Disabilities Act ("ADA").  (ECF No. 38.)  On September 23, 2024, Defendant filed the

15 instant motion to dismiss.  (ECF No. 41.)

16     **II.    STANDARD OF LAW**

17     A motion to dismiss for failure to state a claim upon which relief can be granted under

18 Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

19 *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

20 "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

21 Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in

22 federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the

23 grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal

24 citation and quotations omitted).  "This simplified notice pleading standard relies on liberal

25 discovery rules and summary judgment motions to define disputed facts and issues and to dispose

26 of unmeritorious claims."  *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 512 (2002).

27     On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

28 *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits

3

thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true allegations that contradict matters properly subject to judicial notice).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III. ANALYSIS

Defendant moves to dismiss Plaintiffs' § 1983 and ADA claims against Defendant for failure to state a claim upon which relief can be granted. (ECF No. 41.) The Court will address the claims in turn.

#### A. Plaintiffs' § 1983 Claim

Plaintiffs allege a claim for municipal liability for an unconstitutional custom or practice under § 1983 against Defendant. (ECF No. 38 at 38–42.) Specifically, Plaintiffs contend Defendant has a widespread custom of ignoring medical requests, denying necessary medication, and failing to provide sufficient medical treatment, which Plaintiffs allege happened to Nick and at least eleven other inmates. (*Id.* ¶¶ 87, 104.)

The Ninth Circuit recognizes four theories for establishing municipal liability under § 1983: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa*

1 *Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).  To state a §1983 claim against a municipality
2 under a pervasive practice or custom theory, a plaintiff must allege facts demonstrating "that an
3 'official policy, custom, or pattern' on the part of [the municipality] was 'the actionable cause of
4 the claimed injury.'"  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1143 (9th Cir. 2012) (quoting *Harper*
5 *v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)); *see also Mendiola-Martinez v.*
6 *Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016) (explaining that to establish municipal liability under
7 § 1983, a plaintiff must show a direct causal link between the municipal policy or custom and the
8 alleged constitutional violation).  A "custom" for purposes of municipal liability is a "widespread
9 practice that, although not authorized by written law or express municipal policy, is so permanent
10 and well-settled as to constitute a custom or usage with the force of law."  *St. Louis v. Praprotnik*,
11 458 U.S. 112, 127 (1988).

12 Defendant contends Plaintiffs cite to and rely on eleven filed lawsuits to establish their
13 claim that Defendant maintained a custom of denying medical care to detainees.  (ECF No. 41-1
14 at 4.)  Defendant argues the lawsuits cited by Plaintiffs do not support a § 1983 claim because
15 they do not involve HIV-positive detainees or the denial of HIV medication and are therefore not
16 substantially similar to the instant matter.  (*Id*.)  Defendant further contends even if the three
17 lawsuits which involve medication denial[2] are deemed substantially similar, they still fail to
18 support a § 1983 claim because they are remote in time and unproven incidents.  (*Id*. at 5.)

19 In opposition, Plaintiffs contend the incidents involving the eleven other inmates include
20 failures to provide necessary medical treatment, such as not taking a detainee to the hospital
21 during methamphetamine withdrawals and denying prescribed mental health medication.  (ECF
22 No. 46 at 8, 12.)  Plaintiffs argue the incidents are factually analogous to the instant matter,
23 demonstrating a custom of ignoring medical requests, denying necessary medication, and failing
24 to provide sufficient medical treatment.  (*Id*. at 12.)

---

[2] *See* Complaint, *Ellsworth v. El Dorado Cnty. Nursing Staff*, No. 2:21-CV-1070-EFB P (E.D. Cal. 2021), ECF No. 1; Third Amended Complaint, *Spears v. El Dorado Cnty. Jail*, No. 2:16-CV-2177 EFB P (E.D. Cal. 2019), ECF No. 65; and First Amended Complaint, *Mizerak v. Eslick*, No. 2:16-cv-00323-MCE-CKD (E.D. Cal. 2016), ECF No. 28.

1         Additionally, Plaintiffs argue their case is similar to *Chaidez v. Cnty of Alameda*, in which the plaintiff made multiple complaints that insufficient medical attention created unsanitary conditions for his stoma. No. 3:21-cv-04240-RS, 2023 WL 6466358, at *7 (N.D. Cal. Oct. 3, 2023) Plaintiffs contend the court in *Chaidez* found allegations of nine instances over the course of ten years where inmates had not received adequate medical care with "facts supporting each example, including the name of the detainee and the circumstances of inadequate medical care" were "analogous to the [plaintiff's] factual averments regarding his own experience . . . including 'ignored' medical requests, denials of necessary medication, and insufficient medical treatment." ECF No. 46 at 13. Plaintiffs argue their allegations regarding eleven lawsuits over a period of eight years, the majority occurring within two years, is an even stronger showing of a policy and custom than *Chaidez*. *Id*. at 14.

          Here, Plaintiffs allege Defendant knew or should have known that El Dorado County Jail staff, including sheriff deputies and jail medical staff, deprived Nick of necessary medical treatment and medications. (ECF No. 38 ¶ 104.) Plaintiffs further allege none of the staff were found to be in violation of jail policy, disciplined, or retrained. (*Id*.) Further, Plaintiffs allege Defendant's actions were part of a specifically identified custom or practice. (*See, e.g.*, *id*. ¶¶ 88, 104 (alleging instances demonstrating Defendant had a custom or practice of condoning constitutionally inadequate medical care by failing to discipline, retrain and supervise).) While Plaintiffs' allegations regarding previously filed lawsuits against Defendant is not conclusive, the allegations of prior incidents help illuminate the plausibility of the existence of the alleged unconstitutional customs or practices. *See Bagos v. Vallejo*, No. 2:20-cv-00185-KJM-AC, 2020 WL 6043949, at *5 (E.D. Cal. Oct. 13, 2020) ("Prior incidents involving lawsuits alone, even those which do not result in a finding or admission of wrongdoing, can be sufficient for *Monell* liability purposes in the face of a motion to dismiss."); *see also McCoy v. City of Vallejo*, No. 2:19-cv-001191-JAM-CKD, 2020 WL 374356, at *3 (E.D. Cal. Jan. 23, 2020) (finding unsubstantiated allegations in lawsuits were sufficient to establish pattern of failure to discipline and ratification at the motion to dismiss stage.) Thus, Plaintiffs' allegations regarding previously filed lawsuits sufficiently advance Plaintiffs' claims beyond the threshold of "possibility" to

1  "plausibility," demonstrating that these customs and practices are not isolated incidents but rather

2  part of a longstanding pattern of behavior.  *See Iqbal*, 556 U.S. at 678.

3        Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' § 1983 claim.

4        B.      Plaintiffs' ADA Claim

5        Plaintiffs allege a claim for failure to accommodate under Title II of the ADA against

6  Defendant.  (ECF No. 38 at 42–43.)  Specifically, Plaintiffs contend Defendant violated the ADA

7  by denying Nick his prescribed HIV medication during his detention, despite knowing his HIV-

8  positive status.  (ECF No. 46 at 16.)

9        Title II of the ADA provides that "no qualified individual with a disability shall, by reason

10  of such disability, be excluded from participation in or be denied the benefits of the services,

11  programs, or activities of a public entity, or be subject to discrimination by such entity."  42

12  U.S.C. § 12132.  "To establish a violation of Title II of the ADA, a plaintiff must show that[:] (1)

13  [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or

14  otherwise discriminated against with regard to a public entity's services, programs, or activities;

15  and (3) such exclusion or discrimination was by reason of [his] disability."  *Lovell v. Chandler*,

16  303 F.3d 1039, 1052 (9th Cir. 2002).  To recover monetary damages, a plaintiff must prove

17  intentional discrimination on the part of the defendant.  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124,

18  1138 (9th Cir. 2001).

19        Defendant argues Plaintiffs' SAC fails to establish an ADA claim as it does not show

20  discrimination because of a disability, or causation.  (ECF No. 41-1 at 6.)  Defendant contends

21  Plaintiffs rely on the following alleged statement to Nick by a member of the medical staff as

22  evidence of discriminatory intent to support an ADA claim: "You're not taking care of yourself

23  on the street, why should I take care of you in here?"  (*Id*. at 6.)  Defendant argues the alleged

24  statement does not reference Nick's HIV status or imply any discrimination based on that

25  disability and therefore does not support a claim of discrimination under the ADA.  (*Id.*; *see also*

26  ECF No. 48 at 3.)

27        In opposition, Plaintiffs argue Defendant violated the ADA by denying Nick his

28  prescribed HIV medication during his detention, despite knowing his HIV-positive status.  (ECF

1   No. 46 at 16.)  Plaintiffs contend the statement by the member of the medical staff, taken with the
2   jail records documenting that Nick was known to be HIV positive, is evidence of discriminatory
3   animus against people with HIV.  (*Id*. at 15.)

4     Here, based on the allegations, Defendant knew of Nick's HIV status (ECF No. 38 ¶ 29);
5   Defendant possessed medical records proving that Nick was prescribed HIV medication and had
6   reported taking HIV medication just nine days prior to his detention (*Id.* ¶ 37); Nick repeatedly
7   requested his prescribed HIV medication (*Id.* ¶ 3); and medical staff at El Dorado County Jail
8   denied Plaintiff medical treatment (*Id.* ¶¶ 7, 114).  The reasonable inference from Plaintiffs'
9   allegations is that Defendant denied Nick medical treatment because of his HIV status.  The Court
10  finds Plaintiffs have therefore alleged a cognizable ADA claim.  *Anderson v. Cnty. of Siskiyou*,
11  No. C 10-01428 SBA, 2010 WL 3619821, at *5 (N.D. Cal. Sept. 13, 2010) (finding "[t]he ADA
12  may be violated where there is an 'outright denial of medical services' because the complete lack
13  of access to services may be 'so unreasonable as to demonstrate that they were discriminating
14  against [plaintiff] because of his disability.' (citing *Kiman v. New Hampshire Dep't of Corr.*, 451
15  F.3d 274, 285 (1st Cir. 2006))).

16    Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' ADA claim.

17    **IV.**  **CONCLUSION**

18    For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss.  (ECF No.
19  41.)  Defendant County of El Dorado shall file an answer not later than twenty-one (21) days
20  from the electronic filing date of this Order.

21    IT IS SO ORDERED.

22  Date: June 11, 2025

25  TROY L. NUNLEY
    CHIEF UNITED STATES DISTRICT JUDGE

8